# Elk Natural Gas Company, Appellant, *v.* Ridgway Light & Heat Company.

*Contracts—Leases—Oil and gas leases—Construction—Intention
—Equity—Injunction—Refusal.*

Where a contract for the sale of gas provided that the vendor
should sell to the vendee all the surplus natural gas produced by it
in a certain named district and defined such surplus as "all the
natural gas which is not desired by the vendor for supply to its
customers, except gas used in the drilling of wells in said district,"
the vendor was required to sell to the vendee only such gas as it
did not desire for sale to its customers, irrespective of their place
of residence, and it was not material that the vendor had gas from
other sources with which it could have supplied such customers
whereby a surplus could have been delivered to the vendee; and in
such case a bill in equity to restrain a diminishing or cutting off
of the supply furnished such vendee by the owner of the wells, who
desired the gas for its own customers was properly refused.

Argued March 18, 1918. Appeal, No. 253, Jan. T.,
1916, by plaintiff, from decree of C. P. Elk Co., April T.,
1915, No. 2, refusing an injunction in case of Elk Natu-
ral Gas Company v. Ridgway Light & Heat Company.
Before BROWN, C. J., POTTER, STEWART, FRAZER and
WALLING, JJ. Affirmed.

Bill in equity (1) for an injunction restraining de-
fendant from interfering with or diminishing supply to
plaintiff of natural gas produced in Beaver Meadow dis-
trict, (2) for specific performance of contract relating to
supply of such gas, and (3) for an accounting.

The facts appear in the following opinion of BOUTON,
P. J., sur defendant's eighth request for conclusions of
law:

Eighth: That the complainant's bill in this case must
be dismissed.

Answer: We affirm this request.

Notwithstanding the numerous requests filed on the
part of the plaintiff for findings of fact, the material

question upon which this case hinges is the construction of the contract between the parties and it seems to us that the gas which the first party contracted to sell to the second party is so clearly defined in the contract that no controversy whatever ought to have arisen over it.    It appears that the party of the first part to the contract having developed a considerable quantity of gas in what is known as the Beaver Meadow district and already having large quantities of gas from other sources, was willing to sell to the second party such gas from the Beaver Meadow district as they did not desire for use to supply their customers or for the drillings of wells, and the second party was anxious to purchase the gas.

The contract was made solely for such gas from the Beaver Meadow district that the party of the first part did not desire to supply to its customers and it appears in the contract "that the words 'surplus natural gas' are construed and shall be taken to mean all the natural gas which is not desired by the first party for supply to its customers, and, except gas used in the drilling of wells in said district either by the party of the first part or other persons." The contract provides further: "It is expressly declared and understood that the purpose of this contract is the sale by the first party and the purchase by the second party of all surplus natural gas which is produced by the first party in the so-called Beaver Meadow district above mentioned, which it desires to sell as above provided."

Under this contract, there was nothing to prevent the Ridgway Light & Heat Company from using all of the gas produced from the Beaver Meadow district for supplying its customers if it so desired, and it had the right to do with the gas from its other fields whatever it saw fit.    It could have sold its wells in these other districts absolutely, or it could have sold every foot of gas from these other fields to whomever it saw fit and supply its retail customers from the Beaver Meadow district.    There was no intent in the contract in any way to restrict the

Ridgway Light & Heat Company from doing as it pleased with all gas produced from its fields other than the Beaver Meadow district. It does not occur to us that further discussion is necessary.

It further appeared that defendant was using all the gas from the Beaver Meadow district for its own customers.

The court refused the injunction. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various answers to requests for findings of fact and conclusions of law and the decree of the court.

*Geo. F. Whitmer,* with him *Reed, Smith, Shaw & Beal, H. O. Evans* and *D. J. Driscoll,* for appellant.

*E. H. Baird,* with him *John G. Whitmore* and *W. E. Rice,* for appellee.

PER CURIAM, May 6, 1918:

This appeal is dismissed at appellant's costs, on so much of the opinion of the learned court below as follows the answer to defendant's eighth request for a conclusion of law.